Commonwealth of Pennsylvania, Department of Agriculture, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 8, 1979, before Judges CRUMLISH, JR., BLATT and CRAIG, sitting as a panel of three.

*John E. Childe*, Chief Counsel, for petitioner.

*Michael Klein,* Assistant Attorney General, with him *Gerald Gornish,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, July 17, 1979:

The Pennsylvania Department of Agriculture (employer) appeals to us from a decision of the Unemployment Compensation Board of Review (Board) that LaVonne Dungan (claimant) was qualified to receive benefits. The Board concluded that the claimant had not abandoned her employment, as asserted by the employer, or engaged in any conduct that could be considered willful misconduct under Section 402 (e) of the Unemployment Compensation Law.[1] The employer challenges this conclusion.

The claimant had worked for the employer since February 1976 and had been absent without leave and on sick leave on a number of occasions. She had been reminded by memorandum that a doctor's certificate was required after three consecutive days of sick leave. She was thereafter reprimanded for tardiness and abuse of sick leave privileges and once again reminded of the doctor's certificate requirement. On October 25, 1976, she called in to report that she was not well enough to work, and when she had not appeared for work on November 3, her immediate supervisor telephoned her and reminded her that a doctor's certificate would be required in order for her absence to be approved. On November 8, her father called her supervisor and requested that she be placed on sick leave.[2] It was agreed that she would be back

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

[2] She attempted to explain *her* failure to contact the employer in the following testimony:

QR: Mrs. Dungan why didn't you contact yourself [sic], weren't you able to call the employer at all?

AC: During the whole period?

on December 13, but she did not appear on that date. Her father called again on December 15 or 16 and told her supervisor that she would be back to work on the following Monday, December 20. At that time the supervisor again expressed his concern that she had not yet obtained a medical excuse, and in a letter dated December 15, the employer attempted to inform the claimant that, because she had thus far failed to furnish a doctor's certificate, she would be placed on absent without leave on December 20 unless she returned to work by that time. This letter was sent to the claimant's Londonderry Road, Harrisburg, address which the employer had on its records. The claimant, however, had moved to another address in Dillsburg and, although she testified that she had left a forwarding address with the Postal Service, she also testified that she had never received the letter. She did not return to work on December 20, and neither she nor her father contacted the employer to explain where she was at that time. On January 17, 1977, the employer sent the claimant another letter, addressed in care of her father at his Second Street, Harrisburg, address informing her that her services were terminated effective January 4 because she had not reported to work and had not submitted a medical excuse.

---

QR: Yes.

AC: I was having nervous problem [sic] and I just. . . .

QR: Did you ever talk on the phone with anyone?

AC: I talked on the phone with the girls, I got married.

QR: When were you married?

AC: I was married in November.

QR: You were married in November, but you didn't call your employer any time in November?

. . . .

AC: My father told me he was taking care of it and the girls had contacted me once and that is when I started to feel better.

This Court has stated the rule many times that the failure to comply with an employer's absence policy constitutes willful misconduct, *see, e.g., Gallagher v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 160, 380 A.2d 1325 (1977), particularly after a claimant has received a number of warnings, *Beaverson v. Unemployment Compensation Board of Review*, 34 Pa. Commonwealth Ct. 125, 382 A.2d 1277 (1978). *See also Ferko v. Unemployment Compensation Board of Review*, 9 Pa. Commonwealth Ct. 597, 309 A.2d 72 (1973). The claimant may still be eligible for benefits, however, if he or she can establish good cause for disregarding the employer's rule. *See Holmshek v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 503, 395 A.2d 708 (1979).

In the instant case, the Board found:

Due to an inadvertence in change of address and mail being delivered to her father's address, claimant did not receive a letter from the employer under date of December 15, 1976, directing her to report to work on December 20, 1976 or be placed on absence without leave.

While we accept this finding of the Board,[3] we do not believe that this finding or the evidence in the record can support the conclusion that the claimant had good cause for failing to return to work and for disregarding her employer's rule that a doctor's excuse must be submitted after three days of absence. It is apparent that the claimant's father, whom she designated as her mediator, knew independently of the letter that she was expected to return to work by December 20 and to produce a medical excuse. In fact, he informed

---

[3] The Board also found that the claimant was not medically certified to return to work on December 20. This finding, however, is contradicted by the doctor's certification introduced at the hearing, which indicates that she was able to return as of November 5.

the employer by telephone on December 15 that the claimant would return to work by December 20, and the employer then reminded him again of the need for a medical excuse. Having been previously warned also, the claimant obviously knew of the requirement of a medical excuse; yet she made no attempt, either in person or through her father or anyone else, to present her employer with such medical documentation. Moreover, she made no attempt to explain this omission. We must conclude, therefore, that she failed to establish good cause for her failure to return to work when required to do so or to provide a medical excuse for her absence.

Accordingly, the order of the Board is reversed.

### ORDER

AND Now, this 17th day of July, 1979, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby reversed.